**SECOND DIVISION**
**DOYLE, P. J.,**
**DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 14, 2026**

# In the Court of Appeals of Georgia

A26A1099. SMITH v. THE STATE.

FULLER, Senior Judge.

Following a bench trial, the trial court found Jamie Allison Smith guilty of four counts of first-degree vehicular homicide involving two different victims, one count each of driving under the combined influence of alcohol and methamphetamine to the extent that it was less safe for her to drive ("DUI-less safe (combined influence)") and reckless driving, and four other traffic offenses.[1] Smith appeals from the denial of her motion for a new trial, contending that the evidence was insufficient to support her vehicular-homicide and reckless-driving convictions and that the trial court erred

---

[1] As discussed in more detail below, the court found Smith not guilty of several additional charges and, at sentencing, vacated two of the vehicular-homicide counts and also merged certain counts.

when it denied her motion to suppress the results of a drug test. For the reasons that follow, we disagree and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys a presumption of innocence." *Bell v. State*, 366 Ga. App. 743, 744 (884 SE2d 129) (2023). So viewed, the record shows that, between 8:00 and 9:00 a.m. on June 8, 2024, Smith was driving eastbound on a two-lane road when her car crossed the center line and collided with a westbound tractor-trailer. The collision caused the tractor-trailer to travel into the eastbound lane, where it struck a Nissan Altima, "cut[ting the Nissan] in half, basically from front emblem to rear emblem, lengthwise." Two of the Nissan's occupants (the driver and a passenger) were ejected; their deceased bodies were found "in the tree line" on the side of the road. A third occupant was injured but survived. Data recovered from Smith's car showed that she was traveling fifty-nine miles per hour five seconds before her airbags deployed, that her car's lane-departure warning activated two and one-half seconds before airbag deployment, and that she did not apply her brakes before the impact.

Georgia State Patrol Trooper Levi Perry was one of the first law enforcement officers to arrive on the scene. As he approached Smith's car, "the odor of alcohol was immediately noticeable," and he noticed that Smith's eyelids were "droopy," her speech was "slurred," she was "mumbling," and she was "unsteady on her feet." Smith reported that her driver's license was suspended, that she "had a couple of mixed drinks" the night before, and that she stopped drinking at approximately 3:00 a.m. She also told the trooper that, just before the collision, she had been eating pretzels, looked up, and saw the truck in front of her. At Trooper Perry's request, Smith submitted to a portable breath test, which indicated the presence of alcohol. Emergency personnel then took her to a hospital.

Trooper Perry later met Smith at the hospital, where her eyelids were still droopy and her speech was still slurred and mumbled. He arrested Smith for driving under the influence ("DUI") and vehicular homicide. The trooper read Smith the Georgia driver implied-consent notice, which concluded by asking if she would submit to state-administered chemical tests of her blood. Smith responded by saying "that she could not provide . . . an answer," which the trooper construed as a refusal.

A magistrate judge later issued a search warrant authorizing the search and seizure of blood samples taken from Smith at the hospital. Ensuing testing revealed a blood-alcohol concentration of 0.03 grams per 100 milliliters and the presence of both amphetamine and a "toxic range" of methamphetamine. A grand jury thereafter indicted Smith for: (i) six counts of first-degree vehicular homicide — two counts alleging that she caused the victims' deaths while driving under the influence of alcohol to the extent that it was less safe to drive ("DUI-less safe (alcohol)") (Counts 1–2), two counts premised on reckless driving (Counts 3–4), and two counts premised on DUI-less safe (combined influence) (Counts 5–6); (ii) three counts of serious injury by vehicle, premised on injuries sustained by the Nissan's surviving passenger (Counts 7–9); and (iii) one count each of DUI-less safe (alcohol) (Count 10), DUI-less safe (combined influence) (Count 11), driving with a suspended license (Count 12), reckless driving (Count 13), distracted driving (Count 14), failure to maintain lane (Count 15), and driving on the wrong side of the road (Count 16).

Smith filed a motion to suppress the results of her blood tests, which the trial court denied. She then proceeded to a bench trial, at which the court found her guilty of four of the vehicular-homicide charges (Counts 3–6) and DUI-less safe (combined

4

influence), driving with a suspended license, reckless driving, distracted driving, failure to maintain lane, and driving on the wrong side of the road (Counts 11–16). The court found her not guilty of the two vehicular-homicide charges premised on DUI-less safe (alcohol) (Counts 1–2), the three serious-injury-by-vehicle charges (Counts 7–9), and the substantive DUI-less safe (alcohol) charge (Count 10). The court vacated by operation of law two of the vehicular-homicide charges (Counts 3–4),[2] merged the DUI-less safe (combined influence) charge (Count 11) into one of the remaining vehicular-homicide convictions (Count 5), merged the charges for failure to maintain lane and driving on the wrong side of the road (Counts 15–16) into the reckless-driving conviction (Count 13), and imposed a total sentence of 15 years in prison, to be followed by 15 years on probation. Smith filed a motion for a new trial, which the trial court denied, and this appeal followed.

1. Smith challenges the sufficiency of the evidence to establish causation as to her vehicular-homicide convictions (Counts 3–6), arguing that no evidence was

---

[2] See, e.g., *Hill v. State*, 285 Ga. App. 503, 506(4)(a) (646 SE2d 718) (2007) (explaining that a defendant may "be convicted only once for the death of each victim" (quotation marks omitted)).

presented regarding the cause of the deceased victims' deaths or what injuries they sustained in the collision. We disagree.

"When a criminal defendant challenges the sufficiency of the evidence supporting [her] conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bell*, 366 Ga. App. at 744(1) (quotation marks omitted). See also *Jackson v. Virginia*, 443 US 307, 319(III)(B) (99 SCt 2781, 61 LE2d 560) (1979). "Questions about the weight and credibility of evidence, the inferences to be drawn from it, and the resolution of any conflicts in the evidence are left to the [factfinder]." *Lewis v. State*, 323 Ga. 339, 341(1) (924 SE2d 295) (2025).

Here, as an initial matter, any challenge Smith may have to her guilty verdicts on Counts 3 and 4 is moot, as the trial court vacated those charges by operation of law. See *Milton v. State*, 318 Ga. 737, 742(2) n.5 (900 SE2d 590) (2024) (finding moot the defendant's challenges to the sufficiency of the evidence for vacated or merged counts). See also note 2, above.

To prove that Smith committed first-degree vehicular homicide as charged in Counts 5–6, the State had to establish that, while driving a motor vehicle and without malice aforethought, she caused the victims' deaths by violating OCGA § 40-6-391, which defines the offense of DUI. See OCGA § 40-6-393(a). For a defendant to be convicted of vehicular homicide, her conduct "must have caused the [victim's] death." *Pitts v. State*, 253 Ga. App. 373, 374(1) (559 SE2d 106) (2002). Thus, "the State must prove that the defendant's conduct was the 'legal' or 'proximate' cause, as well as the cause in fact, of the death." *Miller v. State*, 236 Ga. App. 825, 828(2) (513 SE2d 27) (1999). Accord *McGrath v. State*, 277 Ga. App. 825, 828(1) (627 SE2d 866) (2006). An act or failure to act proximately causes an injury when "the act or omission played a substantial part in bringing about or actually causing the injury" and the injury "was either a direct result or a reasonably probable consequence of the act." *McGrath*, 277 Ga. App. at 828–29(1) (quotation marks omitted).

To establish that an injury proximately caused one's death, the State must prove that the injury: (a) "constituted the sole proximate cause of the death," (b) "materially contributed to the happening of a subsequent accruing immediate cause of the death," or (c) "materially accelerated the death, although proximately

7

occasioned by a pre-existing cause." *Brown v. State*, 152 Ga. App. 273, 274(1) (262 SE2d 497) (1979) (quotation marks omitted). Thus, where no evidence is presented of the victims' injuries or how they died or otherwise links a defendant's actions with the deaths, the evidence is insufficient to sustain a vehicular-homicide conviction, "since it may be presumed that death resulted from natural causes." Id. at 274–75(1) (quotation marks omitted).

Here, although the State did not identify the specific nature of the victims' injuries, it presented evidence that both were alive in the car before the collision, were ejected in the collision, and were found dead on the scene. In that regard, the Nissan's surviving passenger testified that, before the collision, one victim (the other passenger) handed him a phone charger, and at some point thereafter, the other victim (the driver) exclaimed, "Oh, my God," before "everything just went out." Moreover, a video recording of the collision captured by a camera in the tractor-trailer showed the Nissan in its lane of travel shortly before impact and attempting to steer away from the tractor-trailer immediately before the collision, which further indicates that the driver, at least, was alive and alert at that point. That evidence, viewed as a whole and in context with the absence of evidence of any other possible causes for the victims'

deaths, was sufficient for the trial court to find, beyond a reasonable doubt, that the collision caused their deaths. See *McGrath*, 277 Ga. App. at 829(1) ("What constitutes proximate cause is undeniably a [question for the factfinder] and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent." (quotation marks omitted)). See also *Lewis*, 323 Ga. at 341(1) (the inferences to be drawn from the evidence are for the factfinder to determine).

Smith's reliance on *Brown*, 152 Ga. App. 273, is misplaced. In that case, not only was there no evidence of the deceased's injuries, there also was no other testimony "linking defendants' actions with the [victim's] death." Id. at 274–75(1). Here, however, evidence that both victims were alive in the car before the collision, ejected during the collision, and found dead on the scene sufficiently linked the collision — and, therefore, Smith's actions — to their deaths. Smith's reliance on *Evans v. State*, 346 Ga. App. 739, 746(1) (816 SE2d 843) (2018) (physical precedent only), likewise is misplaced, as that decision (which is not binding precedent, see Ga. Ct. App. R. 33.2(a)(2)) involved a sheriff's department's medical supervisor's prosecution for involuntary manslaughter for failure to provide proper medical care

to an inmate, a situation plainly not present here.[3] See *Evans*, 346 Ga. App. at 741–43(1). And Smith's reliance on *Wimbush v. State*, 185 Ga. App. 76, 76–77(1) (363 SE2d 347) (1987); *Beaman v. State*, 161 Ga. App. 129, 129–30(1) (291 SE2d 244) (1982) (physical precedent only); and *Long v. State*, 60 Ga. App. 517, 519 (4 SE2d 75) (1939) (physical precedent only), also is misplaced, as we did not hold in any of those decisions that direct, specific evidence of victims' injuries always is required to sustain a vehicular-homicide conviction.

In addition, Smith highlights her acquittals on the charges for injuries sustained by the Nissan's surviving passenger, analogizing the absence of evidence of his specific injuries to the absence of evidence of the deceased victims' injuries. But this analogy ignores a key distinction: the deceased victims died, and, as discussed above, the State presented evidence connecting their deaths to the collision caused by Smith.

Finally, Smith's passing, conclusory assertion that the "circumstantial" evidence in this case must "exclude every other reasonable hypothesis" other than her guilt on these charges also is misplaced, as the State presented direct evidence —

---

[3] Notably, in *Evans*, the State presented evidence of causation through a medical examiner, who was unable to say whether the inmate would have survived, had he received other treatment. See 346 Ga. App. at 745–46(1).

10

including eyewitness testimony and Smith's own statements — that the car she was driving veered into oncoming traffic, causing the collision in which the deceased victims were ejected from their car. See *Chamblee v. State*, 333 Ga. App. 749, 752 (777 SE2d 41) (2015) (an eyewitness's testimony that she saw a defendant commit a charged crime is direct evidence, and the reasonable hypothesis rule "applies only when the evidence is *entirely* circumstantial" (citation modified)). Accord *Hill v. State*, 297 Ga. 675, 678(2)(b) (777 SE2d 460) (2015) (holding that the circumstantial evidence doctrine did not apply because "the State did not rely *solely* on circumstantial evidence" but rather presented "substantial direct evidence" of the defendant's guilt (emphasis added)). Consequently, we reject Smith's challenges to the sufficiency of the evidence of causation as to Counts 5–6.

2. Smith further contends that the evidence is insufficient to establish that she drove with reckless disregard for another's safety so as to support both her vehicular-homicide convictions premised on reckless driving and the underlying substantive reckless-driving conviction (Counts 3–4 and 13). We disagree.

As discussed above, Smith's challenges to her guilty verdicts on Counts 3 and 4 are moot. See *Milton*, 318 Ga. at 742(2) n.5. See also note 2 and Division 1, above.

11

A person commits the offense of reckless driving when she "drives any vehicle in reckless disregard for the safety of persons or property." OCGA § 40-6-390(a). Accordingly, "[t]o prove reckless driving, the [S]tate must show that the defendant committed a specific act evidencing" such reckless disregard. *Fraser v. State*, 263 Ga. App. 764, 765(1) (589 SE2d 329) (2003).

> [C]harges of reckless driving require proof of criminal negligence. Criminal negligence means not merely such negligence as might render one liable for damages in a civil suit, but recklessness or carelessness of such character as to show a disregard of consequences or a heedless indifference for the safety and rights of others who might reasonably be expected to be injured thereby.

*Walden v. State*, 273 Ga. App. 707, 710–11(1) (616 SE2d 462) (2005) (citation modified). Thus, for example, "speeding, unaccompanied by other traffic violations, *can* form the basis for a reckless driving conviction if the [S]tate presents evidence that a defendant was driving at an excessive rate of speed given the posted speed limit and the driving conditions existing at the time." *Fraser*, 263 Ga. App. at 765–66(1) (quotation marks omitted).

"The offense of reckless driving may be committed in a variety of ways, and whether a defendant's manner of driving under the circumstances demonstrated a

12

reckless disregard for the safety of others is a question that is reserved for the [factfinder]." *Travis v. State*, 314 Ga. App. 280, 281(1) (724 SE2d 15) (2012) (quotation marks omitted). Thus, we have affirmed reckless-driving convictions where, for example: (i) the defendant "was driving 32 miles per hour above the posted speed limit," "late at night after having admittedly consumed alcohol," in a highway construction zone "along which construction barrels were situated," id.; and (ii) the defendant was driving 24 miles per hour above the speed limit "on a city street near pedestrians, front yards, and driveways" and "showed signs of impairment due to alcohol consumption," *Fraser*, 263 Ga. App. at 766(1).

(a) Here, the trial court was entitled to find that, while traveling approximately 60 miles per hour, eastbound, on a two-lane road early in the morning, with alcohol and methamphetamine in her system, Smith looked down, ignored her car's lane-departure warning, and failed to brake when she finally noticed that she had veered well into the other lane and was headed toward on oncoming truck. And notwithstanding her acquittal on the DUI-less safe (alcohol) charge, the court was entitled to find that, at the time of the early-morning collision, Smith smelled of alcohol, her eyes were droopy, her speech was slurred, she was mumbling, she was

13

unsteady on her feet, and she had been consuming mixed drinks until only a few hours earlier. Pretermitting whether any of these numerous individual factors was sufficient for the court to find her guilty of reckless driving, their combined effect was more than adequate for the court to find that, as a whole, they evinced "a reckless disregard for the safety of persons or property" so as to sustain her conviction for reckless driving. *Fraser*, 263 Ga. App. at 765(1). Accord *Holley v. State*, 363 Ga. App. 107, 112(3) (871 SE2d 13) (2022) (reckless driving requires proof that the defendant committed an act "under a given set of circumstances that render the act reckless"). See also generally *Travis*, 314 Ga. App. at 281(1) (whether a defendant drove recklessly is a question for the factfinder).

(b) Nevertheless, Smith argues that the State "limited the scope of" the vehicular-homicide charges premised on reckless driving (Counts 3–4) by alleging that she drove recklessly only in specific, limited ways. And she highlights the proposition that "[w]hen a crime can be committed in more than one way, the prosecution cannot be permitted to prove that crime in a different manner than that alleged" in the charging instrument. *Roach v. State*, 289 Ga. App. 23, 25 (656 SE2d 165) (2007). As with her challenges to the sufficiency of the evidence on Counts 3 and 4, this challenge

to those counts — which implicates the fatal-variance rule, see id. ("Proof that the crime was committed in a wholly different manner amounts to a fatal variance and does not support a conviction of the offense alleged . . . .") — also is moot. See *Herring v. State*, 363 Ga. App. 686, 689(2) (872 SE2d 459) (2022) (concluding that a fatal-variance claim was moot where it challenged a merged count). See also *Milton*, 318 Ga. at 742(2) n.5; note 2 and Division 1, above.

3. Finally, Smith challenges the denial of her motion to suppress the results of one of her blood tests. She argues that the search warrant authorizing her blood to be tested was overbroad, as it was not supported by probable cause to believe that drugs would be found in her system and lacked the particularity required to authorize drug testing. We disagree.

(a) We do not address the State's claim in its appellate brief that the trial court erred when it denied the State's motion to dismiss Smith's motion to suppress as untimely, as the State did not file a cross-appeal or independent appeal seeking review of this issue, pretermitting whether it would have been authorized to do so. See, e.g., *State v. Pye*, 282 Ga. 796, 803 n.11 (653 SE2d 450) (2007), overruled in part on other grounds by *State v. Abbott*, 303 Ga. 297, 303(3) (812 SE2d 225) (2018); *Clinton v.*

*State*, 359 Ga. App. 303, 306(2) n.4 (857 SE2d 283) (2021); *State v. Nickerson*, 324 Ga. App. 576, 580–81(2) (749 SE2d 768) (2013). See also generally OCGA § 5-7-1 (limiting the State's right to appeal in criminal cases).

(b) "When a defendant moves to suppress evidence based on an illegal search, the [S]tate must bear the burden of proving that the search was lawful." *Leon-Velazquez v. State*, 269 Ga. App. 760, 761(1) (605 SE2d 400) (2004). Accord *State v. de la Paz*, 370 Ga. App. 853, 854 (899 SE2d 447) (2024). See also OCGA § 17-5-30(b). On appeal from a decision on a motion to suppress, we accept the trial court's factual findings if there is any evidence to support them. See *State v. Colvard*, 296 Ga. 381, 382(1) (768 SE2d 473) (2015). Thus, "the trial court's decisions on questions of fact and credibility are to be accepted unless they are clearly erroneous," and we construe the evidence in the light most favorable to the trial court's ruling. Id. We review the application of the law to the undisputed facts, however, de novo. See *State v. Hammond*, 313 Ga. App. 882, 884 (723 SE2d 89) (2012).

(i) *General standards for issuing a search warrant.* Under OCGA § 17-5-21(a), a search warrant may issue upon a peace officer's sworn, written complaint that "states facts sufficient to show probable cause that a crime is being committed or has been

16

committed and which particularly describes the place or person, or both, to be searched and things to be seized." The ensuing warrant likewise "shall particularly describe the things to be seized[,] and the search must be limited to that matter described." *de la Paz*, 370 Ga. App. at 856(1) (quotation marks omitted). See also US Const. Amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). The particularity requirement "prevents general searches — that general, exploratory rummaging in a person's belongings by the government that has been rejected since the founding as a violation of fundamental rights." *State v. Wilson*, 315 Ga. 613, 614 (884 SE2d 298) (2023) (quotation marks omitted). Thus, "a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." Id. at 615 (quotation marks omitted). And "[s]earches unsupported by independent probable cause that extend beyond the descriptions contained in the warrant" likewise are illegal. *de la Paz*, 370 Ga. App. at 856(1) (quotation marks omitted).

Nevertheless, "the particularity requirement must be applied with a practical margin of flexibility," depending on the object of the seizure, and a description of

what is to be seized "will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Palmer v. State*, 310 Ga. 668, 675(2)(c) (853 SE2d 650) (2021) (quotation marks omitted). Accord *de la Paz*, 370 Ga. App. at 856(1).

> Thus, when determining whether probable cause for a search warrant exists, a magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . , there is a fair probability that contraband or evidence of a crime will be found in the place to be searched.

*de la Paz*, 370 Ga. App. at 857(1) (quotation marks omitted). Accord *Palmer*, 310 Ga. at 672(2)(a).

> A magistrate may draw reasonable inferences from the material supplied to her by applicants for a warrant. And the test for probable cause is not a hypertechnical one to be employed by legal technicians, but is based on the factual and practical considerations of everyday life on which reasonable and prudent men act.

*State v. Haynes*, 373 Ga. App. 154, 155(1) (907 SE2d 222) (2024) (citation modified). "In determining whether the particularity requirement is sufficiently met in the warrant, our courts read the warrant as a whole and consider other evidence, including, but not limited to, the supporting affidavit." *de la Paz*, 370 Ga. App. at

857(1)(a) (quotation marks omitted). Where, as here, no oral testimony is provided, we "focus on the information set forth within the four corners of the affidavit." *Haynes*, 373 Ga. App. at 155(1) (quotation marks omitted).

(ii) *Standards for issuing a search warrant to test a suspect's blood.* When a search warrant is limited to testing one's blood "for alcohol, with no authorization given for the testing for drugs," and "the affidavit and application in support of the warrant make no request for, or mention of, the need to test the blood for anything other than alcohol," the warrant does not authorize the blood to be tested for drugs. *de la Paz*, 370 Ga. App. at 857–58(1)(a)–(b) (quotation marks omitted). Accord *State v. Johnson*, 374 Ga. App. 195, 197 (911 SE2d 727) (2025). See *de la Paz*, 370 Ga. App. at 859(2) (a warrant "authorizing the drawing of the blood (and the testing of that blood for the presence of alcohol)" does not excuse law enforcement from obtaining a warrant for drug testing because "the ensuing chemical analysis of the blood sample to obtain physiological data is a further invasion of privacy interests" (citation modified)).

(iii) *Analysis.* Here, another trooper who responded to the scene — Andrew Phillips — submitted a combined affidavit and application for a search warrant for the testing of Smith's blood. He attested that her blood contained evidence of DUI

(OCGA § 40-6-391), first-degree vehicular homicide (OCGA § 40-6-393), and failure to maintain lane (OCGA § 40-6-48). Trooper Phillips further asserted that: (i) Smith's car struck the tractor-trailer after traveling into its lane at approximately 8:48 a.m.; (ii) when Trooper Perry approached Smith's car, he detected a "strong odor of alcohol coming from the vehicle"; (iii) Smith was "unsteady on her feet," her eyes were "droopy," her speech was "slurred," and "the odor of an alcoholic beverage" emanated from her breath; (iv) she told the trooper that "she had consumed a couple [of] mixed drinks the night before"; and (v) a portable breath test revealed the presence of alcohol. Finally, Trooper Phillips attested as follows:

> Your affiant has training and knowledge in the area of impaired drivers. *Intoxicants, including drugs and alcohol*, can impair reaction time, coordination, and attention, all of which diminish[ ] an individual[']s ability to safely operate a motor vehicle. Your affiant has training in the area of *controlled substances and alcohol*, and knows that evidence of consumption of *intoxicants* can be located in the blood and urine of an individual for a period of time after consumption and tested to determine level of impairment. Your affiant knows from training and experience that blood is routinely collected during medical treatment and tested for the presence of *alcohol and controlled substances* for the purpose of medical treatment. These records can be admissible for the purpose[ ] of establishing *intoxication*. (Emphases added.)

The ensuing search warrant authorized the search and seizure of a sample of Smith's blood but did not identify the type of testing permitted to be done. In its order denying Smith's motion to suppress, the trial court found that the warrant was supported by probable cause and properly authorized testing "for any evidence of impairment."

(A) *Probable cause.* As discussed above, Trooper Phillips's affidavit/application explicitly described both Smith's multiple manifestations of impairment and how, in his experience, both drugs and alcohol may cause such impairment. That information, combined with the nature of the deadly collision Smith appeared to have caused, was sufficient for the trial court to determine that there was "a fair probability" that her blood would contain evidence that she had been driving while impaired. *de la Paz*, 370 Ga. App. at 857(1) (quotation marks omitted). See also generally *Haynes*, 373 Ga. App. at 155(1) ("[A] magistrate's decision to issue a search warrant upon a finding of probable cause is afforded substantial deference, and even doubtful cases should be resolved in favor of upholding a magistrate's determination that a warrant is proper." (quotation marks omitted)). We therefore reject Smith's claim that the search warrant was not supported by probable cause.

(B) *Particularity.* The DUI statute cited in Trooper Phillips's affidavit/ application has several subsections that describe different ways of committing the offense, including by driving under the influence of alcohol, drugs, other substances, or combinations thereof. See OCGA § 40-6-391(a)(1)–(6); *de la Paz*, 370 Ga. App. at 855–56(1). "As a result, different facts are required to prove the alternative methods of committing the crime." *de la Paz*, 370 Ga. App. at 855(1) (quotation marks omitted). Here, unlike the affidavit/application and ensuing search warrant in *de la Paz*, both of which specifically identified only subsection (a)(1) of the DUI statute (which addresses only alcohol), neither Trooper Phillips's affidavit/application nor the search warrant itself was so limited. See 370 Ga. App. at 854–55, 857(1)(a). Similarly, unlike the affidavit/application in *Johnson*, which explicitly sought and authorized only "testing to determine the extent to which [the defendant] had consumed alcohol" and expressly identified DUI-less safe (alcohol) as the offense she was suspected of committing, the affidavit/application and warrant in this case again contained no such limitations. See 374 Ga. App. at 195–97 (citation modified).

We acknowledge that the search warrant in this case, standing alone, arguably may give rise to concerns as to whether it constitutes an impermissible, general

22

warrant lacking sufficient particularity, as the warrant itself does not expressly limit the purposes for which Smith's blood could be tested. See *Wilson*, 315 Ga. at 614–15. But when read in conjunction with Trooper Phillips's affidavit/application — which explicitly described both Smith's manifestations of impairment and how, in the trooper's experience, both drugs and alcohol may cause such impairment — the search warrant necessarily authorized testing of Smith's blood for both drugs and alcohol and limited testing to those purposes. See *de la Paz*, 370 Ga. App. at 857(1)(a) (courts must consider both the search warrant and the supporting affidavit to determine whether the particularity requirement is met). We therefore affirm the denial of Smith's motion to suppress.

*Judgment affirmed. Doyle, P. J., and Davis, J., concur.*